John Rodda, defendant, appeals the trial court's decision finding him guilty of assault on the basis that the trial court's decision was against the manifest weight of the evidence. Having found that the only evidence in this case was the conflicting testimony of the alleged victim and the alleged assailant, Rodda, and having found that trial court could have reasonably believed the alleged victim's testimony over Rodda's, we affirm the decision of the trial court.
 I.
This action has its basis in an incident of what popular culture has termed "road rage." The undisputed facts are that while Rodda was driving his motor vehicle on August 13, 1994, a motor vehicle driven by Cynthia Bieghler made an abrupt left hand turn in front of him. Rodda was forced to slam on his brakes to avoid colliding with Bieghler and her son, who was a passenger in the car. Rodda claimed that Bieghler gave him the finger at that time; Bieghler, however, does not remember whether she did so. Bieghler then turned her car into her driveway, where she and her son exited the car. Meanwhile, Rodda stopped his van at the entrance of the driveway.
At this point the parties' recount of the facts greatly diverge. Bieghler claims that as she was walking up her driveway, she noticed Rodda running toward her and yelling. Startled by this, Bieghler claims that she and her son began running toward their apartment. Bieghler claims that she was almost at her apartment when Rodda grabbed her by the back of her hair and then struck her in the face. Bieghler alleges that she fell to her knees after receiving the blow, and that Rodda proceeded to strike her again in the face. Bieghler claims that afterward Rodda turned around to leave and that she followed him toward his van to copy down his license plate number. Bieghler also claims that she did not say anything to him during the encounter.
Paul Gene Horn, a maintenance man for the apartment complex, approached the individuals toward the end of their encounter from around the corner. Horn claimed that he heard a woman yelling "Why are you hitting me?" and "Please don't hit me." Then Horn claims that he saw a woman walk around the corner and walk down the driveway with a man following behind her. Horn claims that the woman said that she wanted to get his license plate number and that he hit her. Horn testified that the man walked calmly behind her, got into his van, and drove away. Horn further testified that the man looked like he was well-groomed, not disheveled, and that he did not notice that the man had sustained any injuries.
As to Rodda's version of the events, he claims that he was upset because Brieghler almost caused him to hit into the passenger side of her car where her son was seated. Rodda claims that he thought there must have been an emergency for her to make such an abrupt turn in front of him. As a consequence, Rodda claims that he stopped his car to ask her if there was some sort of an emergency. Rodda testified that when he got half way up the driveway he asked Brieghler, "Is there an emergency?" According to Rodda, Bieghler responded "Don't mess with me, I'm a cop." Rodda asserts that he retorted, "Good, I want to see your badge." Rodda testified that Brieghler then looked in her purse, but was unable to produce a badge. He claims that Brieghler then said that she has a white license plate on the back of her car, which indicates that she is a police officer. At this point it must be noted that Bieghler is not a police officer and that her license plates, which are partially white, are Hawaii state license plates.
After Bieghler allegedly told Rodda about her license plates, Rodda claims that he walked around to the back of the car to view her license plate. Rodda alleges that Bieghler followed behind him and was calling him names and yelling obscenities at him. Rodda asserts that Brieghler then spit in his face twice and, afterward, began walking toward the door of her apartment. Rodda testified that he called after her because he "wanted to return the favor." Rodda said that he walked up behind her and spit on her neck.
According to Rodda, Brieghler responded by turning around and punching him in the temple. Rodda also claims that Brieghler was trying to kick him in the knee and groin area. Rodda's legs were bare because he was wearing shorts at the time of the incident. Rodda claims that he then struck Brieghler in the face in self-defense. He stated that as soon as he hit her he started walking back to his car and that Brieghler followed him to copy down his license plate number.
Brieghler then told her son to get someone to call the police, which he did. Upon the responding officer's arrival, the officer suggested that Bieghler have her injuries examined at a hospital. Thereafter, Bieghler was taken to the hospital. Bieghler sustained wounds on her nose, a wound under her eye, and her eyes were black and blue. As a result of the injuries she sustained, Bieghler filed a complaint against Rodda, and Rodda was arrested. At the time of his arrest, the arresting police officer was unable to see any bruises on Rodda's legs, thighs, or face. The only injury apparent on Rodda was a small mark on his little right finger.
Rodda was charged with a misdemeanor assault, and was subsequently convicted. The trial court sentenced Rodda to six months probation. Rodda now brings this timely appeal of his conviction.
 I.
In his sole assignment of error, Rodda argues that:
 THE TRIAL COURT'S FINDING OF GUILTY ON ONE COUNT OF ASSAULT UNDER OHIO REV. CODE § 2901.13(A) WAS IN ERROR BECAUSE THE MANIFEST WEIGHT OF THE EVIDENCE ESTABLISHED THAT JOHN RODDA ACTED ONLY IN SELF-DEFENSE.
Rodda argues that the trial court's guilty verdict was against the manifest weight of the evidence because he established by the preponderance of the evidence that he merely acted in self-defense. Rodda's only evidence that he acted in self-defense was his own testimony. Rodda alleges that he only hit Brieghler after she hit him in the face and began kicking him in the legs and groin area. He further alleges that he hit her only to stop her from continuing to hit him. Rodda claims that this evidence, his testimony, was sufficient to establish by a preponderance of the evidence that he hit Brieghler in self-defense.
The Supreme Court recently clarified the manifest weight of the evidence standard in State v. Thompkins (1997), 78 Ohio St.3d 380. The Court explained that the manifest weight of the evidence standard concerns "the inclination of the greater amount of credible evidence, offered in trial, to support one side of the issue rather than the other." Id. at 387, quoting Black's Law Dictionary (6th ed. 1990) 1433. The Court further explained that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of conflicting testimony." Id. Finally, the Court approved the following formulation of the manifest weight of the evidence standard set forth in State v. Martin (1983), 20 Ohio App.3d 172:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."
Although when considering a challenge based upon the manifest weight of the evidence, a reviewing court is to consider the credibility of the witnesses, our consideration of the witnesses' credibility is extremely constrained. State v. Fogle (Mar. 7, 1997), Montgomery App. No. 16113, unreported. The weight to be given to the credibility of the witnesses is primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. "[O]nly when it is patently apparent that the fact finder lost its way will this court substitute its judgment on matters of credibility." State v.Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, unreported.
With this standard in mind, we will address Rodda's argument. After reviewing the transcripts we cannot find the trial court's decision was against the manifest weight of the evidence. Rodda's self-defense argument was entirely based upon his own testimony; there was no physical evidence to support his claim that Bieghler struck him on his temple and kicked him on his bare legs. And his testimony as to his self-defense claim was contradicted by Bieghler's testimony. Furthermore, after reviewing Rodda's and Bieghler's testimony, we find that the trial court could have reasonably believed Bieghler's testimony over Rodda's. In view of this, we are mindful that the trial court was in a better position to observe Rodda's and Bieghler's demeanor, gestures, and voice inflections. Hence, because the transcript does not indicate that the trial court clearly lost its way in judging credibility of their testimony, we overrule this assignment of error.
The judgment of the trial court is affirmed.
WOLFF, J. and GRADY, J., concur.
Copies mailed to:
Patrick G. Carney
David H. Landon
Hon. Robert E. Messham, Jr.